UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| DOUGLAS KOMEN, Derivatively on Behalf of SOUTHWEST AIRLINES CO., | ) ) ) | Case No. |
| Plaintiff, | ) ) | VERIFIED STOCKHOLDER |
| v. | ) ) | DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND |
| GARY C. KELLY, TAMMY ROMO, RON RICKS, WILLIAM H. CUNNINGHAM, JOHN T. MONTFORD, NANCY B. LOEFFLER, DAVID W. BIEGLER, JOHN G. DENISON, DOUGLAS H. BROOKS, J. VERONICA BIGGINS, THOMAS W. GILLIGAN, and GRACE D. LIEBLEIN, | ) ) ) ) ) ) ) ) ) ) | UNJUST ENRICHMENT |
| Defendants, | ) ) | |
| -and- | ) ) | |
| SOUTHWEST AIRLINES CO., a Texas corporation, | ) ) ) | |
| Nominal Defendant. | ) ) ) | DEMAND FOR JURY TRIAL |

Plaintiff, by his attorneys, submits this Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty and Unjust Enrichment. Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to plaintiff which are based on personal knowledge. This complaint is also based on the investigation of plaintiff's counsel, which included, among other things, a review of public filings with the U.S. Securities and Exchange Commission ("SEC") and a review of news reports, press releases, and other publicly available sources.

**NATURE AND SUMMARY OF THE ACTION**

1.      This is a stockholder derivative action brought by plaintiff on behalf of nominal defendant Southwest Airlines Co. ("Southwest" or the "Company") against certain of its officers

and directors for breach of fiduciary duty, unjust enrichment, and violations of law. These wrongs resulted in hundreds of millions of dollars in damages to Southwest's reputation, goodwill, and standing in the business community. Moreover, these actions have exposed Southwest to hundreds of millions of dollars in potential liability for violations of state and federal law.

2.     Southwest is a major passenger airline in the United States. According to the latest data from the U.S. Department of Transportation ("DOT"), the Company is the largest domestic air carrier in the United States, as measured by the number of domestic originating passengers. In 2019, over 162 million passengers flew with Southwest. The Company currently operates 742 Boeing 737 airplanes across the United States.

3.     This action concerns Southwest's history of disregarding safety regulations and the resulting harm caused by these actions. As revealed in an audit report from the DOT Office of Inspector General ("OIG"), Southwest failed to maintain sufficient maintenance records for airplanes that carried millions of passengers over the past two years. Southwest's current failure to comply with federal aviation regulations is an ongoing problem that continues to manifest to the detriment of the Company. For years, Southwest has failed to maintain and operate its aircraft with proper maintenance records in violation of U.S. aviation regulations. The Federal Aviation Administration ("FAA") has previously fined Southwest several times, amounting to over ten million dollars in penalties, in response to Southwest's lack of or inadequate records for its airplanes' maintenance and repairs. Southwest's current noncompliance exposes the Company to further regulatory scrutiny and liability, including civil fines from the FAA. In addition, it courts disaster, as the Company flies noncompliant airplanes.

4.     Moreover, the Company's failure to abide by these known regulations renders numerous of the Individual Defendants' (as defined herein) statements to the investing public false

and misleading.  In particular, the Individual Defendants made false and misleading statements that failed to disclose the Company's noncompliance with maintenance and safety regulations and the significant increased risk to passengers as a result.

5.     In addition, the Individual Defendants violated their fiduciary obligations of good faith, loyalty, and due care by failing to act to correct the Company's actions and culture after numerous instances of Southwest's compliance failures.  By permitting noncompliance with federal aviation regulations, Southwest's directors and officers exposed its airplanes and passengers to potential safety risks, reduced the Company's revenue due to flight delays and cancellations, and negatively affected consumer confidence and preference in selecting Southwest over other airlines.  Southwest has also incurred other expenses in connection with its failure to adhere to U.S. regulations, such as legal and operational costs sustained by internal investigations and responses to outside investigations.

6.     Further, as a direct result of this unlawful course of conduct, Southwest is now the subject of a federal securities class action lawsuit filed in the U.S. District Court for the Northern District of Texas on behalf of investors who purchased Southwest's stock.

7.     On February 18, 2020, in accordance with Texas law, plaintiff sent a demand to the Board of Directors (the "Board") of Southwest to initiate litigation against those responsible for the above wrongdoing.  After not receiving a response, plaintiff sent multiple follow up letters. Again, he was met with silence.  In light of the Board ignoring plaintiff's demand for over four months, he now brings this action to hold accountable the Individual Defendants for breaching their fiduciary duties.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court in accordance with 28 U.S.C. §1391 because: (i) Southwest maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Southwest, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

11.     Plaintiff Douglas Komen was a stockholder of Southwest at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Southwest stockholder.  Plaintiff is a citizen of California.

**Nominal Defendant**

12.     Nominal defendant Southwest is a Texas corporation with principal executive offices located at 2702 Love Field Drive #DR6TX, P.O. Box 36611, Dallas, Texas.  Accordingly, Southwest is a citizen of Texas.  Southwest operates Southwest Airlines, a passenger airline that provides air transportation in the United States and some international markets. Southwest's business strategy uses cost discipline and profitably charging low fares. This strategy includes the use of the Boeing 737, a single aircraft type; a point-to-point route structure, as opposed to "hub-and-spoke"; and productive employees.   As of December 31, 2019, the Company had approximately 60,800 full-time employees.

**Defendants**

13.     Defendant Gary C. Kelly ("Kelly") is Southwest's Chief Executive Officer and a director and has been since July 2004, and Chairman of the Board and has been since May 2008. Defendant Kelly was also Southwest's President from July 2008 to January 2017; Vice Chairman of the Board from July 2004 to May 2008; Executive Vice President from June 2001 to July 2004; Chief Financial Officer from 1989 to July 2004; Vice President Finance from 1989 to 2001; and Controller from 1986 to 1989.  Defendant Kelly is named as a defendant in a related securities class action complaint that alleges he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Southwest paid defendant Kelly the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Non-Equity Incentive Plan Compensation | Nonqualified Deferred Compensation Earnings | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|
| 2019 | $750,000 | $300,000 | $6,374,951 | $967,200 | $89,191 | $289,782 | $8,771,124 |
| 2018 | $750,000 | $300,000 | $5,250,019 | $1,118,400 | $72,712 | $235,324 | $7,726,455 |
| 2017 | $740,625 | $238,300 | $5,250,010 | $949,200 | $58,263 | $323,802 | $7,560,200 |

Defendant Kelly is a citizen of Texas.

14.    Defendant Tammy Romo ("Romo") is Southwest's Chief Financial Officer and has been since September 2012, and Executive Vice President and has been since July 2015. Defendant Romo was also Senior Vice President of Finance from September 2012 to July 2015; Senior Vice President of Planning from February 2010 to September 2012; Vice President of Financial Planning from September 2008 to February 2010; Vice President – Controller from February 2006 to August 2008; Vice President – Treasurer from September 2004 to February 2006; Senior Director of Investor Relations from March 2002 to September 2004; Director of Investor Relations from December 1994 to March 2002; Manager of Investor Relations from September 1994 to December 1994; and Manager of Financial Reporting from September 1991 to September 1994.  Defendant Romo is named as a defendant in a related securities class action complaint that alleges she violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  Southwest Airlines paid defendant Romo the following compensation as an executive:

| Year | Salary | Bonus | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|-------|--------------|----------------------------------------|------------------------|-------|
| 2019 | $503,125 | $121,200 | $2,019,969 | $390,749 | $154,330 | $3,189,373 |
| 2018 | $488,125 | $117,600 | $1,960,010 | $438,413 | $135,028 | $3,139,176 |
| 2017 | $473,125 | $115,000 | $1,804,948 | $412,224 | $202,910 | $3,008,207 |

Defendant Romo is a citizen of Texas.

15.    Defendant Ron Ricks ("Ricks") is Southwest's Vice Chairman of the Board and a director and has been since July 2015.  Defendant Ricks was also Executive Vice President and Chief Legal & Regulatory Officer from September 2011 to July 2015; Corporate Secretary from May 2008 to January 2013; Executive Vice President Corporate Services from May 2008 to September 2011; Executive Vice President – Law, Airports, and Public Affairs from September 2006 to May 2008; Senior Vice President – Law, Airports, and Public Affairs from August 2004 to September 2006; and Vice President – Government Affairs from 1986 to August 2004.

Defendant Ricks is also a member of Southwest's Safety and Compliance Oversight Committee and has been since at least April 2017.   Southwest paid defendant Ricks the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2019 | $121,500 | $160,035 | - | $281,535 |
| 2018 | $123,000 | $150,018 | - | $273,018 |
| 2017 | $211,069 | $150,015 | $78,077 | $439,161 |

Defendant Ricks is a citizen of Texas.

16.   Defendant William H. Cunningham ("Cunningham") is Southwest's Lead Director and has been since May 2008, and a director and has been since September 2000.  Defendant Cunningham is also a member of Southwest's Audit Committee and has been since at least April 2016.  Southwest paid defendant Cunningham the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $148,500 | $160,035 | $308,535 |
| 2018 | $150,000 | $150,018 | $300,018 |
| 2017 | $157,700 | $150,015 | $307,715 |

Defendant Cunningham is a citizen of Texas.

17.   Defendant John T. Montford ("Montford") is a Southwest director and has been since May 2002.  Defendant Montford is also Chair and a member of Southwest's Audit Committee and has been since at least April 2016.   Southwest paid defendant Montford the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $133,500 | $160,035 | $293,535 |
| 2018 | $136,500 | $150,018 | $286,518 |
| 2017 | $146,000 | $150,015 | $296,015 |

Defendant Montford is a citizen of Texas.

18.     Defendant Nancy B. Loeffler ("Loeffler") is a Southwest director and has been since March 2003.   Southwest paid defendant Loeffler the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $95,000 | $160,035 | $255,035 |
| 2018 | $98,000 | $150,018 | $248,018 |
| 2017 | $112,000 | $150,015 | $262,015 |

Defendant Loeffler is a citizen of Texas.

19.     Defendant David W. Biegler ("Biegler") is a Southwest director and has been since May 2006.   Defendant Biegler is also a member of Southwest's Audit Committee and Safety and Compliance Oversight Committee and has been since at least April 2016.   Southwest paid defendant Biegler the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $130,000 | $160,035 | $290,035 |
| 2018 | $133,000 | $150,018 | $283,018 |
| 2017 | $144,000 | $150,015 | $294,015 |

Defendant Biegler is a citizen of Texas.

20.     Defendant John G. Denison ("Denison") is a Southwest director and has been since November 2008.   Defendant Denison is also a member of Southwest's Audit Committee, and Chairman and a member of Southwest's Safety and Compliance Oversight Committee and has been since at least April 2016.   Southwest paid defendant Denison the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $130,000 | $160,035 | $290,035 |
| 2018 | $131,500 | $150,018 | $281,518 |
| 2017 | $139,200 | $150,015 | $289,215 |

Defendant Denison is a citizen of Texas.

21.     Defendant Douglas H. Brooks ("Brooks") is a Southwest director and has been since February 2010.   Defendant Brooks is also a member of Southwest's Safety and Compliance Oversight Committee and has been since at least April 2016.   Southwest paid defendant Brooks the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $96,500 | $160,035 | $256,535 |
| 2018 | $98,000 | $150,018 | $248,018 |
| 2017 | $109,000 | $150,015 | $259,015 |

Defendant Brooks is a citizen of Texas.

22.     Defendant J. Veronica Biggins ("Biggins") is a Southwest director and has been since August 2011.  Southwest paid defendant Biggins the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $95,000 | $160,035 | $255,035 |
| 2018 | $98,000 | $150,018 | $248,018 |
| 2017 | $109,000 | $150,015 | $259,015 |

Defendant Biggins is a citizen of Georgia.

23.     Defendant Thomas W. Gilligan ("Gilligan") is a Southwest director and has been since September 2015.  Defendant Gilligan is also a member of Southwest's Audit Committee and has been since at least April 2017, and a member of Southwest's Safety and Compliance Oversight Committee and has been since at least April 2016.    Southwest paid defendant Gilligan the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $102,500 | $160,035 | $262,535 |
| 2018 | $104,000 | $150,018 | $254,018 |
| 2017 | $110,500 | $150,015 | $260,515 |

Defendant Gilligan is a citizen of Texas.

24.     Defendant Grace D. Lieblein ("Lieblein") is a Southwest director and has been since 2016.  Defendant Lieblein is also a member of Southwest's Safety and Compliance Oversight Committee and has been since at least April 2017.  Southwest paid defendant Lieblein the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Total |
|---|---|---|---|
| 2019 | $96,500 | $160,035 | $256,535 |
| 2018 | $98,000 | $150,018 | $248,018 |
| 2017 | $109,000 | $150,015 | $259,015 |

Defendant Lieblein is a citizen of Michigan.

25.     The defendants identified in ¶¶13-14 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶13, 15-24 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶16-17, 19-20, 23 are referred to herein as the "Audit Committee Defendants."  The defendants identified in ¶¶15, 19-21, 23-24 are referred to herein as the "Safety and Compliance Oversight Defendants."  Collectively, the defendants identified in ¶¶13-24 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

26.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Southwest and its stockholders fiduciary obligations of loyalty and care, and were and are required to use their utmost ability to control and manage Southwest in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of Southwest and not in furtherance of their personal interest or benefit.

27.     To discharge their duties, the officers and directors of Southwest were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls

- 10 -

of the financial affairs of the Company.  By virtue of such duties, the officers and directors of Southwest were required to, among other things:

(a)    conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(b)    remain informed as to how Southwest conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

28.    The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Southwest, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

29.    The Individual Defendants breached their duty of loyalty by allowing defendants to cause, or by themselves causing, the Company to engage in business practices that flouted safety rules and regulations and made misleading statements, all of which and caused Southwest to incur substantial damage.

30.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of Southwest, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the

other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Southwest has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

31.     In addition to these duties, under the Audit Committee Charter, the Audit Committee Defendants, defendants Biegler, Cunningham, Denison, Gilligan, and Montford, owed and owe specific duties to Southwest to assist the Board in overseeing "(1) the integrity of Southwest's financial statements, [and] (2) Southwest's compliance with legal and regulatory requirements." Moreover the Audit Committee's Charter provides that the Committee shall:

> [M]eet to review and discuss the Company's annual audited financial statements and quarterly financial statements with management and the independent auditor, including a review of the Company's specific disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations";

> *       *       *

> [D]iscuss the Company's major financial risk exposures and its policies with respect to risk assessment and risk management and the steps management has taken to monitor and control or mitigate such exposures;

> *       *       *

> [R]eport regularly to the entire Board, including reviews of any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditors, or the performance of the internal audit function[.]

**Additional Duties of the Safety and Compliance Oversight Committee Defendants**

32.     In addition to these duties, under Safety and Compliance Oversight Committee's Charter, the Safety and Compliance Oversight Committee Defendants, defendants Biegler, Brooks, Denison, Gilligan, Lieblein, and Ricks, owed specific duties to Southwest.  In particular, the Committee's duties include:

- periodically assessing the Company's safety and operational compliance obligations and associated risks and performance relative to those standards;

- reviewing such policies, programs, and procedures as it shall deem necessary, including the Company's safety and operational compliance reporting systems;

- meeting regularly with management of the Company to assess the Company's safety and operational compliance practices generally, including assessing the adequacy of the resources, training, communications, risk assessments, and auditing of operational processes directed towards supporting safety and operational compliance;

- assessing whether the Company's safety and operational compliance practices support the Company's Code of Ethics; [and]

- periodically reporting to the Board on the adequacy and effectiveness of the Company's safety and operational compliance programs and making recommendations to the Board regarding the Company's safety and operational compliance practices generally[.]

33.     The Safety and Compliance Oversight Committee Defendants violated and continue to violate their fiduciary duties by failing to assess the effectiveness of Southwest's maintenance, repair, and safety records within the context of federal aviation regulations. Furthermore, these directors and officers abdicated their responsibility to recommend corrective measures to the Board to ensure compliance with federal aviation regulations.

## SOUTHWEST'S HISTORY OF FAILING TO FOLLOW
## FEDERAL AVIATION REGULATIONS

34.     Southwest operates a passenger airline that provides scheduled air transportation services in the United States and near-international markets.  The Company currently operates a total of 742 Boeing 737 aircraft; and serves 101 destinations in forty states, the District of Columbia, and the Commonwealth of Puerto Rico, as well as ten near-international countries, including Mexico, Jamaica, the Bahamas, Aruba, the Dominican Republic, Costa Rica, Belize, Cuba, the Cayman Islands, and Turks and Caicos.

35.     Southwest has a history of failing to comply with U.S. regulatory requirements and incurring costly fines.  In 2008, the FAA sought a $10.2 million fine against Southwest for flying airplanes that it had not properly inspected for fuselage cracks.  At the time, the FAA's proposed fine was the largest ever sought.  The FAA found that Southwest pilots flew nearly 60,000 flights on forty-six planes that Southwest had failed to inspect for fatigue-related cracking of the fuselage area.  Due to a lack of inspections, Southwest operated six airplanes with fatigue cracks—an oversight that should not have occurred had Southwest conducted the required inspections.  Southwest eventually settled with the FAA for $7.5 million.

36.     In 2014, the FAA again sought a civil penalty against Southwest, this time for $12 million, because the FAA found that Southwest failed to comply with federal aviation regulations when repairing its aircraft.  The FAA blamed Southwest and its third-party contractor for failing to follow proper procedure when replacing fuselage skins on its Boeing 737 airplanes.  Specifically, the FAA found that Southwest and its contractors did not install fasteners when applying sealant to the new fuselage skin panels and failed to properly shore up the repaired aircraft.  Southwest and its contractor also failed to properly install ground wire on the water drain masts of two of its Boeing 737 airplanes.  Southwest later settled with the FAA for $2.8 million.

37.     In 2015, the FAA proposed yet another fine against Southwest after determining that Southwest had improperly recorded a temporary repair to the aluminum skin of one of its Boeing 737 airplanes as a permanent repair.  The FAA alleged that Southwest operated this aging aircraft for almost 25,000 flights without performing the required periodic inspections on the temporary repair.  Southwest was also faulted for operating this airplane for over 4,800 flights beyond the flight threshold by which it was required to have performed the permanent repair.

**SOUTHWEST'S CONTINUES TO FAIL TO ABIDE BY FEDERAL SAFETY REGULATIONS EVEN AFTER DISASTER STRIKES**

38.     On April 17, 2018, a blade of an engine on a Southwest plane broke off mid-flight. As a result, shrapnel shattered a window and a woman was partially sucked out of the aircraft.   It was the first passenger fatality in a U.S. airline accident since 2009.

39.     The National Transportation Safety Board and FAA began an investigation into the accident. The investigators stated that the blade was showing signs of "metal fatigue."  Metal fatigue is when microscopic cracks occur in mental that can splinter when under the stress place on jetliners and engines.  Notably, metal fatigue was the culprit behind an engine failure on a Southwest plane in Florida in 2016.

40.     On April 18, 2018, the FAA announced that it would order ultrasonic inspections of the engine fan blades of certain airplanes after they reached a certain number of takeoffs and landings.  The FAA estimated the order would cover 220 engines.  The directive came a year after the engine's maker, CFM International, recommended that the engines undergo these inspections.

41.     On June 25, 2019, during after-market hours, the *Wall Street Journal* published an article titled "FAA Reassigns Senior Managers in Office Overseeing Southwest Airlines," which reported that the FAA had "removed three senior managers in the office overseeing [Southwest], amid allegations of lax safety enforcement raised by agency whistleblowers and various resulting government inquiries." The article also noted that "[t]he [DOT]'s inspector general has been looking into some of the safety issues for many months ... including lapses by the airline in documenting maintenance for more than 100 of its jets," as well as "failures to reliably compute the weight of checked baggage and hazardous landing incidents in which one aircraft smacked a wingtip on the tarmac and another ran off the strip in stormy weather."

42.     On January 30, 2020, the DOT OIG draft audit report revealed that Southwest flew more than seventeen million passengers over the past two years on airplanes with unconfirmed

maintenance records.  According to the DOT OIG, nearly two-thirds of the FAA employees interviewed have concerns over the safety culture at Southwest.  Furthermore, several FAA officials disclosed that Southwest is frequently slow or resistant to providing the FAA with safety information during their interviews with the DOT OIG.

43.     Southwest's unconfirmed records for aircraft inspections, maintenance, and repairs not only violates federal aviation regulations, but also prevents the FAA from assessing whether Southwest has completed all mandatory repairs, inspections, and maintenance for dozens of Southwest's airplanes.  By failing to maintain reliable paperwork and records, neither Southwest nor regulators are capable of confirming and verifying that Southwest satisfies all safety requirements.

44.     Southwest's current lack of proper safety records is traceable back to its purchase of used Boeing 737 airplanes from foreign airline carriers.  Southwest purchased eighty-eight used Boeing 737 airplanes from foreign carriers located in Canada, Argentina, Turkey, Russia, and China.  As of November 11, 2019, Southwest lacks complete safety records for thirty-eight of the eighty-eight Boeing 737 airplanes.

45.     Southwest's lack of maintenance records is so alarming that Clayton Foushee ("Foushee"), the head of the FAA's Office of Audit and Evaluation, recommended immediately grounding more than four dozen of Southwest's foreign airplanes in October 2019.  Foushee took specific issue with Southwest's inability to certify to the FAA or to the public that its airplanes meet mandatory safety standards.

46.     Foushee highlighted that Southwest failed to sufficiently oversee its third-party maintenance contractor, which Southwest tasks with inspecting its airplanes and vouching that prior maintenance satisfies U.S. regulatory requirements.  For instance, from 2018 to 2019,

Southwest's third-party contractor did not report over 432 repairs to the FAA, including some repairs that did not conform to U.S. regulatory standards.  At least two aircraft also had previously unnoticed paperwork discrepancies. Southwest had not even translated all of the foreign maintenance records into English before operating its used, foreign Boeing 737 airplanes.

47.     Furthermore, U.S. Representative Peter DeFazio ("Rep. DeFazio"), the Chairman of the House Transportation and Infrastructure Committee, similarly urged in an October 2019 letter that the FAA should not allow Southwest to operate these airplanes unless the FAA concludes with absolute certainty that Southwest's airplanes are airworthy.

48.     Following the DOT OIG audit report, Rep. DeFazio and the Chairman of the Subcommittee on Aviation, U.S. Representative Rick Larsen ("Rep. Larsen"), issued a statement on the FAA and Southwest.  In particular, on February 12, 2020, Rep DeFazio stated, "The Inspector General's report not only paints a disturbing picture of the safety culture at Southwest Airlines, but it also raises serious questions about the FAA's ability to properly oversee an airline into which millions of people put their trust each time they step onboard."  Rep. Larsen stated, "The Inspector General's report makes clear Southwest Airlines and the FAA failed to ensure the safety of the traveling public.  … I am concerned about FAA's lack of oversight of Southwest's operations and a persisting culture of unsafe practices at Southwest Airlines."

49.     In accordance with its fiduciary duties, Southwest's officers and directors are legally obligated to comply with all federal aviation regulations and ensure that the Company operated in safe manner.  The Individual Defendants, despite the red flags detailed above, failed to do so and allowed a pervasive culture at the Company that flouted rules, regulations, and safety.

## THE FALSE AND MISLEADING STATEMENTS

50.    In addition the allowing the pervasive culture of lawlessness at the Company, the Individual Defendants made a series of false and misleading statements concerning Southwest's maintenance, safety, and compliance with applicable rules and regulations.   In particular, on February 7, 2017, Southwest filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2016 (the "2016 Form 10-K").   Defendants Kelly, Romo, Ricks, Biegler, Biggins, Brooks, Cunningham, Denison, Gilligan, Lieblein, Loeffler, and Montford signed the 2016 Form 10-K.   In the 2016 Form 10-K, these defendants claimed that "the Company has policies and procedures in place that are designed to promote compliance with the laws of the jurisdictions in which it operates."   In addition, regarding maintenance, the 2016 Form 10-K stated that Southwest "performs substantially all line maintenance on its aircraft and provides ground support services at most of the airports it serves," that "the Company has arrangements with certain aircraft maintenance firms for major component inspections and repairs for its airframes and engines, which comprise the majority of the Company's annual aircraft maintenance costs," and "Southwest's use of a single aircraft type allows for simplified ... maintenance, flight operations, and training activities."

51.    Defendants Kelly, Romo, Ricks, Biegler, Biggins, Brooks, Cunningham, Denison, Gilligan, Lieblein, Loeffler, and Montford made substantially similar statements in the Company's Annual Report on Form 10-K for the year ended December 31, 2017, filed with the SEC on February 7, 2018 (the "2017 Form 10-K").   In addition, in the 2017 Form 10-K, these defendants touted Southwest's "participat[ion] in Required Navigation Performance ('RNP') operations as part of the FAA's Performance Based Navigation program, which is intended to modernize the U.S. air traffic control system by ... making more safe and efficient use of airspace."   The 2017 Form 10-

K claimed that the program "improve[s] operational capabilities by opening up many new and more direct airport approach paths to produce safer and more efficient flight patterns" and bragged that "[s]ince its first use of RNP in 2011, Southwest has conducted approximately 58,000 RNP approaches, including over 19,000 in 2017."

52.     On February 5, 2019, the Company filed with the SEC its Annual Report on Form 10-K for the year ended December 31, 2018 (the "2018 Form 10-K").  Defendants Kelly, Romo, Ricks, Biegler, Biggins, Cunningham, Denison, Gilligan, Lieblein, Loeffler, and Montford signed the 2018 Form 10-K.  The 2018 Form 10-K contained substantially similar statements and the 2016 and 2017 Forms 10-K.

53.     These statements detailed above were false and misleading.  In particular, as subsequent events revealed: (i) Southwest did not have policies and procedures in place to promote compliance with the law; (ii) the Company was not operating in compliance with applicable law, rules, and regulations; (iii) Southwest effectively captured the FAA, leading the agency to exercise lax regulatory oversight; and (iv) the Company's passengers were at increased risk as a result.

## THE TRUTH SLOWLY EMERGES

54.     The truth behind the Company's business prospects and Individual Defendants' wrongdoing began to emerge with the *Wall Street Journal*'s article on June 25, 2019.

55.     Then on January 30, 2020, the DOT OIG draft audit report began to reveal the extent of the Company's failure to abide by regulations, lack of proper safety records, and overall culture of disregarding safety at Southwest.  Southwest's stock price fell from $56.89 per to share on January 29, 2020, to $54.98 per share on January 31, 2020, a drop of $1.91 per share, a decrease of over $1 billion.

## DAMAGES TO SOUTHWEST

56.     As a result of the Individual Defendants' improprieties, Southwest disseminated improper, public statements concerning the Company's compliance with government maintenance and safety regulation, as well as, the safety risk of passengers traveling on Southwest flights.  These improper statements have devastated Southwest's credibility as reflected by the Company's $1 billion market capitalization loss.

57.     In addition to damaging the Company's reputation in the credit and equity markets, the wrongdoing herein damaged Southwest's reputation among its customers.  Individuals are less likely to fly an airline that does not make their safety a priority.

58.     In light of the DOT OIG audit report, Southwest acknowledged in its Annual Report on Form 10-K for the year ended December 31, 2019, filed with the SEC on February 4, 2020, that the Company will potentially incur additional costs and revenue losses due to its noncompliance with federal aviation regulations, noting:

> The Company strongly disagrees with many of the draft statements and conclusions in the report and is not aware of any action the FAA might take against the Company arising from the OIG's audit of the FAA; however, the issuance of new FAA regulations, regulatory amendments, or orders or directives could result in flight schedule adjustments and groundings or delays in aircraft deliveries, as well as lower operating revenues, operating income, and net income due to a variety of factors, including, among others, **(i)** *lost revenue due to flight cancellations and disruptions as a result of a smaller operating aircraft fleet*, **(ii)** *the lack of ability to make corresponding reductions in expenses because of the fixed nature of many expenses*, and **(iii)** *possible negative effects on Customer confidence and airline choice*.

59.     Further, as a direct and proximate result of the Individual Defendants' actions, Southwest has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred from defending and paying any settlement in the class action for violations of federal securities laws;

(b)      costs incurred from defending the Company in lawsuits over the Company's faulty safety controls, including the lawsuits filed from the 2018 accident;

(c)      costs incurred from correcting its inadequate internal controls for maintenance and safety records; and

(d)      costs incurred from compensation and benefits paid to the defendants who have breached their duties to Southwest.

## <u>DERIVATIVE AND DEMAND MADE ALLEGATIONS</u>

60.      Plaintiff brings this action derivatively in the right and for the benefit of Southwest to redress injuries suffered, and to be suffered, by the Company as a direct result of breaches of fiduciary duty and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Southwest is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

61.      Plaintiff will adequately and fairly represent the interests of Southwest in enforcing and prosecuting its rights.

62.      Plaintiff was a stockholder of Southwest at the time of the wrongdoing complained of, has continuously been a stockholder since that time, and is a current Southwest stockholder.

63.      On February 18, 2020, plaintiff sent a litigation demand to the Board detailing the Company's long track record of safety violations, its culture of noncompliance, and the harm that resulted therefrom.  Plaintiff provided a nonexhaustive list of culpable wrongdoers and demanded the Board undertake an investigation and sue those responsible for the wrongdoing detailer in the demand.  A true and correct copy of the February 18, 2020 demand is attached hereto as Exhibit A.

64.     After not receiving a response for almost two months, on April 10, 2020, plaintiff sent a follow up letter asking that the Board confirm that it had begun its investigation.  Again, plaintiff did not receive a response.  A true and correct copy of the April 10, 2020 letter is attached here to as Exhibit B.

65.     On June 5, 2020, plaintiff sent a third letter demanding that the Board investigate and sue the wrongdoers.  Still, the Board has not responded.

66.     In light of the Board ignoring plaintiff's demand, it has effectively wrongfully refused the demand.

67.     Plaintiff has not made any demand on the other stockholders of Southwest to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     Southwest is a publicly held company with over 508 million shares outstanding and thousands of stockholders as of April 24, 2020;

(b)     making demand on such a number of stockholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of stockholders; and

(c)     making demand on all stockholders would force plaintiff to incur excessive expenses, assuming all stockholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

68.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.     The Individual Defendants owed and owe Southwest fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Southwest the highest obligation of loyalty and care.

70.     The Individual Defendants and each of them, violated and breached their fiduciary duties by allowing, encouraging, or disregarding the illegal activity of such substantial magnitude and duration.

71.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Southwest has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

72.     Plaintiff, on behalf of Southwest, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Unjust Enrichment

73.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Southwest.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Southwest.

75.     Plaintiff, as a stockholder and representative of Southwest, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

76.     Plaintiff, on behalf of Southwest, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Southwest, demands judgment as follows:

A.      Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breach of fiduciary duty and unjust enrichment;

B.      Directing Southwest to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Southwest and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.      a proposal to strengthen the Company's controls compliance with safety regulations;

2.      a proposal to strengthen the Company's controls over its disclosure procedures;

3.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board; and

4.      a provision to permit the stockholders of Southwest to nominate at least three candidates for election to the Board;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a

constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Southwest has an effective remedy;

D.      Awarding to Southwest restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 22, 2020                  BALON B. BRADLEY LAW FIRM

/s/*Balon B. Bradley*
BALON B. BRADLEY

State Bar No. 02821700
11910 Greenville Avenue, Suite 220
Dallas, TX 75243
Telephone: (972) 992-1582
Facsimile: (972) 755-0424
E-mail: balon@bbradleylaw.com

ROBBINS LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
ERIC M. CARRINO
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
       soddo@robbinsllp.com
       ecarrino@robbinsllp.com

Attorneys for Plaintiff

1458764